UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCHELL RENEE MOORE,

    Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

Civil Action No. 12-13606

HON. ARTHUR J. TARNOW
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Marchell Renee Moore brings this action under 42 U.S.C. § 405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On December 11, 2009, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of July 6, 2009 (Tr.116-126). After the initial denial of her claim, Plaintiff filed a request for an administrative hearing, held on November 2, 2010 before Administrative Law Judge ("ALJ") Donald G. D'Amato (Tr. 33). Plaintiff, represented by Michael Krut, testified, as did Vocational Expert ("VE") Diane Regan (Tr. 36-47, 48-51). On December 16, 2010, ALJ D'Amato found that Plaintiff was not disabled (Tr. 23). On

-1-

June 12, 2012, the Appeals Council denied review (Tr. 1-6). Plaintiff filed for judicial review in this Court on August 14, 2012.

## BACKGROUND FACTS

Plaintiff, born September 22, 1960, was age 51 when the ALJ issued his decision (Tr. 23, 116). She completed 11th grade (Tr. 152) and worked previously as a housekeeper (Tr. 146). She alleges disability as a result of back, head, shoulder, and neck conditions as a result of a car accident (Tr. 146).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

She currently lived in Westland, Michigan (Tr. 37). She was unable to work after sustaining injuries in a July 6, 2009 car accident (Tr. 37). *Plaintiff's counsel acknowledged that an MRI of the lower back taken shortly after the accident showed only "minimal degenerative changes* (Tr. 37). Plaintiff experienced a "knot" on her head after sustaining a blow in the accident but had been told to "keep a[n] ice pack on it" (Tr. 38).

Plaintiff was unable to sit for more than 10 minutes, stand for more than 15, or walk more than half a block (Tr. 38). She could lift a maximum of eight pounds (Tr. 39). She experienced difficulty climbing stairs (Tr. 39). She experienced limitations in bending, reaching, and fine manipulations (Tr. 39). On a scale of one to ten, she typically experienced level "nine" pain without medication and level "eight" after taking Vicodin and Flexeril (Tr. 40).

On a typical day, Plaintiff would arise, have a cup of coffee, and then would be driven to a doctor's appointment by her mother or daughter (Tr. 40). On some days, she would take hour-long car rides with her mother, followed by a nap (Tr. 40). She was able to perform light housekeeping chores but was unable to vacuum (Tr. 40). She experienced sleep

disturbances as a result of pain (Tr. 41-42). She coped with neck and head pain with the use of hot compresses (Tr. 42). Daily headaches required her to lie down in a darkened room and take pain medication (Tr. 42). Back pain radiated into her left leg (Tr. 43). Her discomfort was exacerbated by cold, damp weather (Tr. 43). She typically fell asleep after taking Vicodin (Tr. 43-44). Due to difficulties in concentration, she experienced problems following a conversation or television plot (Tr. 44). She alleged depression as a result of her physical limitations, but acknowledged that her treatment was limited to a prescription for Cymbalta by a family doctor (Tr. 44-45). She denied much socializing (Tr. 45). She took walks two or three times a week, adding that pain obliged her to take frequent breaks (Tr. 45). She opined that she was unable to perform even unskilled work due to her need for frequent naps and position changes (Tr. 46).

    B.    **Medical Evidence**

        1.    **Treating Sources**

Emergency room records dated July 6, 2009 state that Plaintiff sought treatment for injuries sustained in an accident in which her car had been "rear-ended" (Tr. 202). She reported that she hit her head on the steering wheel upon impact and experienced a headache and neck and back pain (Tr. 202). A CT of the brain and x-rays of the cervical, thoracic, and lumbar spine showed no abnormalities (Tr. 203, 207-210, 212-215). Upon release, she was prescribed a four-day supply of Vicodin (Tr. 211).

Plaintiff began physical therapy the same month (Tr. 220). She reported pain and tightness of the upper, middle, and lower back (Tr. 220). She characterized her pain as a level six to ten on a scale of one to ten (Tr. 220). She reported problems dressing and performing daily activities (Tr. 220). She reported that as a result of the car accident, she experienced financial problems and depression (Tr. 233). Therapy notes state that Plaintiff

exhibited an antalgic gait favoring the right side (Tr. 221). She reported a slightly reduced level of pain after undergoing three sessions (Tr. 224).

The same month, Terry A. Viviani, D.C. administered chiropractic adjustments, advising Plaintiff to refrain from all lifting (Tr. 259). In August, 2009, Dr. Viviani recommended "no physical activity" at Plaintiff's first 10 sessions but on August 31, 2009 opined that she could perform "light duties" following receipt of an MRI of the lumbar spine showing only "minimal degenerative changes" (Tr. 238, 241). The same month, treating physician Valerie Hudson, M.D. noted Plaintiff's reports that she required her daughter's help in performing self care activities (Tr. 379).

September and October, 2009 physical therapy notes show that Plaintiff received cervical, thoracic, and lumbar spine treatment including mechanical traction and hot packs (Tr. 331-351). In October, 2009, chiropractor Kevin L. Self noted that Plaintiff was unable to perform any sitting, standing, or walking but could lift 10 pounds on an occasional basis (Tr. 329). The same month, Dr. Hudson referred Plaintiff for a neurological consultation (Tr. 377). Plaintiff continued to undergo therapy through November, 2009 (Tr. 298-321).

Also in November, 2009, neurologist Thomas Giancarlo, D.O. examined Plaintiff, noting her reports of continued headaches and back pain (Tr. 369). He administered a occipital nerve block (Tr. 369). He encouraged her to continue exercises learned in physical therapy (Tr. 369). On December 4, 2009 Dr. Self found that Plaintiff was to remain off work through January 4, 2010 (Tr. 297). The following week, Plaintiff reported to Dr. Hudson that a recent nerve block relieved headache pain (Tr. 374). The same month, Dr. Giancarlo noted Plaintiff's reports of forgetfulness and only temporary relief from the nerve blocks (Tr. 365). Dr. Hudson prescribed Cymbalta (Tr. 373). December, 2009 MRIs of the cervical and thoracic spine showed "minimal disc bulges" of the cervical spine but no

herniations, nerve root involvement, or other abnormalities (Tr. 260-261).

On January 8, 2010, Dr. Self opined that Plaintiff was unable to work through February 8, 2010 (Tr. 270). Dr. Hudson's treating notes state that Plaintiff reported psychological improvement after taking Cymbalta (Tr. 372). MRIs of the brain showed no evidence of hemorrhage or other significant abnormalities (Tr. 363-364). Physiatrist Joel DeGuzman, M.D. administered a nerve block to the neck and upper back muscles, observing 5/5 muscle strength (Tr. 362). Dr. Hudson's March, 2010 treating notes state that Plaintiff exhibited depression and reported continued pain (Tr. 370).

On September 22, 2010, Dr. Hudson's treatment records note Plaintiff's report that she was "not getting better" and continued to experience neck spasms, headaches, and forgetfulness (Tr. 420). The following day, Dr. Hudson completed an assessment on behalf of Plaintiff's application for disability benefits, noting diagnoses of occipital neuritis, headaches, back pain, and headaches (Tr. 399). She opined that the conditions had lasted more than one year, noting Plaintiff's complaints of headaches, problems concentrating, and back, neck, and shoulder pain (Tr. 400). Dr. Hudson opined that Plaintiff's alleged symptoms were consistent with "the total medical evidence" (Tr. 400). She stated that Plaintiff's headaches obliged her to lie down for more than 31 minutes at a time (Tr. 401). Dr. Hudson opined that Plaintiff was able to stand or walk for a maximum of two hours in an eight-hour workday but was unable to sit for even one hour (Tr. 403).

Dr. Hudson found that Plaintiff's condition required her to lie down for more than six hours every day and rendered her unable to lift more than 10 pounds on an occasional basis (Tr. 403-404). She stated that Plaintiff was capable of driving short distances but could not travel by bus or work around heights or machinery (Tr. 405). She opined that Plaintiff's disorientation, disturbances in mood, psychomotor retardation, and "chronic pain syndrome

with depression" would create marked work-related limitations (Tr. 406-408). She also found marked social and concentration related limitations (Tr. 409). She found that Plaintiff's condition had resulted in "episodes of deterioration or decompensation in work or in a work-like setting[s]" causing an "exacerbation of psychiatric signs and symptoms" (Tr. 410). She opined that Plaintiff had been disabled since July 6, 2009 (Tr. 413).

### 2. Material Submitted After the December 16, 2010 Administrative Decision[1]

January, 2011 psychiatric intake notes state that Plaintiff reported depression and problems with "recent recall" along with head, neck, and back pain (Tr. 426). She reported financial problems as a result of her inability to work (Tr. 426). O. Keith Lepard, M.D. noted that Plaintiff's oral history of her problems was "organized and clear" with a subdued mood (Tr. 427). Dr. Lepard found no evidence of "thought distortion, hallucinations or bizarre thought processes" (Tr. 427). He diagnosed her with depression, "probable closed head injury," and pain as a result of "skeletal injuries" (Tr. 427). He recommended a change of

---

[1] Material submitted subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). To establish grounds for remand based on such material, the claimant must show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." 42 U.S.C. § 405(g). Plaintiff has not cited any of the newer records in her arguments for remand. Further, based on my own review of this material, I conclude that it does not provide grounds for remand. Dr. Lepard did not begin treatment until the month following the administrative decision. Thus, his treating observations are instrinsically irrelevant to Plaintiff's condition on or before December 16, 2010. *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 712 (6th Cir.1988). His opinion that she was disabled as of July, 2009 would be entitled to little, if any weight, considering that he did not begin treatment until 18 months later. If Plaintiff believes that she can establish disability for a period postdating December 16, 2010, she is not barred from making a new application for benefits. *Id.*

antidepressant (Tr. 427). The same month, Dr. Hudson stated that Plaintiff was unable to work between January 31, 2011 and December 31, 2011 (Tr. 431).

In November, 2011, Dr. Lepard composed a letter on behalf of Plaintiff's claim for disability benefits, stating that since the July, 2009 accident, Plaintiff was "no longer employable in her past area of work or in any area of work for which she might qualify" (Tr. 430). He found that her depression was "a direct result of her present life circumstances" (Tr. 430).

### C. Vocational Expert Testimony

VE Diane Regan classified Plaintiff's previous work as a housekeeper, as unskilled at the light[2] exertional level (Tr. 49). The ALJ then posed the following question, taking into account Plaintiff's age, educational level, and work experience:

> Assume an individual . . . who has the following limitations; requires work which is simple, unskilled, with one, two or three-step instructions, occasionally close proximity to coworkers and supervisors, meaning that the individual can occasionally function as a member of the team, occasionally indirect contact with the public and the low-stress environment defined as having only occasional changes in the work setting. Such an individual can lift and carry ten pounds frequent[ly] and twenty pounds occasionally, can stand and/or walk with normal breaks for about six hours in an eight-hour work day, but can do so for only fifteen minutes at one time, needs a cane to ambulate, can sit with normal breaks for a total of six hours in an eight-hour work day, but can do so for only fifteen minutes at one time, can occasionally perform pushing and pulling motions with the upper and lower extremities within that aforementioned weight restriction[], but no overhead reaching with the upper extremities, needs to avoid hazards in the work place, such as moving machinery and unprotected heights, needs to be restricted to a work environment with stable temperatures, stable humidity and good ventilation

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

> and can perform each of the following postural activities occasionally; climbing stairs with handrails, balance, and stoop, and crouch, and kneel, and crawl, but needs to avoid climbing ladders, scaffolds and ropes. There should be (Tr. 50) no repetitive twisting or bending at the waist. Can such an individual do Claimant's past work? (Tr. 49-50).

(Tr. 50). The VE replied that the above-described individual would be unable to perform Plaintiff's past relevant work, but could perform the light, unskilled work of a packer (3,000 positions in the local economy); sorter (2,000); and inspector checker (Tr. 9,000) (Tr. 50). The VE found that if the same individual were also limited to lifting five pounds frequently and ten occasionally, and standing or walking for two hours and sitting for six, she could perform the sedentary, unskilled work of a sorter (1,500); bench assembler (3,000); or mail clerk (1,200) (Tr. 50).

The VE testified that if the same individual were additionally limited by the need to be off task for at least an hour every day, or, was required to miss more than two days of work each month due to medical problems, all gainful employment would be precluded (Tr. 51). She concluded her testimony by stating that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") except for the findings pertaining to a sit/stand option which were based on her own professional experience (Tr. 51).

### D. The ALJ's Decision

Citing Plaintiff's medical records, the ALJ determined that Plaintiff experienced the severe impairments of "back, neck, and shoulder pain as well as headaches secondary to a motor vehicle accident with minimal degenerative changes in the lumbar spine; minimal disc bulges in the cervical spine; occipital neuritis; and depressive disorder not otherwise specified, secondary to medical condition," finding that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr.

16). He found that Plaintiff retained the residual functional capacity ("RFC") to perform exertionally light work with the following restrictions:

> She . . . requires work which is simple, unskilled, with one, two, or three step instructions, occasionally in close proximity to coworkers and supervisors (meaning that the claimant can occasionally function as a member of a team), occasionally indirect contact with the public, in a "low stress" environment defined as having only occasional changes in the work setting. . .can stand and/or walk (with normal breaks) for a total of 6 hours in an 8-hour workday, but can do so for only 15 minutes at one time; occasionally needs a cane to ambulate; can sit (with normal breaks) for a total of 6 hours in an 8-hour workday, but can do so for only 15 minutes at one time; can occasionally perform pushing and pulling motions with the upper and lower extremities within the aforementioned weight restrictions; no overhead reaching with the upper extremities; needs to avoid hazards in the workplace such as moving machinery and unprotected heights; needs to be restricted to a work environment with stable temperatures, stable humidity, and good ventilation; can perform each of the following postural activities occasionally; climbing stairs with handrails, balancing, stooping, crouching, kneeling, and crawling, but needs to avoid climbing ladders, scaffolds, and ropes; no repetitive twisting or bending at the waist (Tr. 18-19).

Citing the VE's findings, the ALJ found that although Plaintiff was unable to perform her past relevant work, she could work as a packer, sorter, or inspector checker (Tr. 22).

The ALJ discounted Plaintiff's allegations of disability, noting that the imaging studies of the brain and spine were essentially unremarkable (Tr. 20). He accorded "limited" weight to Dr. Hudson's opinion that Plaintiff was disabled, noting that it was not supported by the imaging studies or the findings of specialized sources (Tr. 21). He assigned "great weight" to Dr. Viviani's finding that Plaintiff was capable of exertionally light work as of August 31, 2009 (Tr. 20).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff contends that the ALJ erred by failing to adopt Dr. Hudson's September, 2010 disability opinion. *Plaintiff's Brief,* at 8-14, *Docket #9.* She makes a separate argument that the failure to follow the "Treating Physician Rule" (as set forth in 20 C.F.R. § 404.1527(c)) cannot be categorized as a harmless error. *Id.* at 14-16.

"[I]f the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir.2009) (internal quotation marks omitted)(citing *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir.2004)). Pursuant to 20 C.F.R. § 404.1527(c)(2-6),

> [i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion. *Wilson*, at 544.

Moreover,"the Commissioner imposes on its decision makers a clear duty to 'always give good reasons'"for the weight accorded a treating source's opinion. *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir.2011)(citing 20 C.F.R. § 404.1527(c)(2)).

Contrary to Plaintiff's argument, the ALJ's discussion of Dr. Hudson's September, 2010 "disability opinion" does not contain procedural or substantive error. He acknowledged the length and frequency of the treating relationship, noting that Plaintiff had received monthly treatment from Dr. Hudson since 2009 (Tr. 21). He observed that Dr. Hudson was "a general practice physician" and that she had noted Plaintiff's complaints of headaches and back and neck pain; prescribed pain medication; and made referrals to specialists (Tr. 21).

He also provided "good reasons" for giving "limited weight" to Dr. Hudson's September, 2010 findings, noting that (1) MRIs of the brain and spine were negative for any condition or injury causing the symptomology alleged by Plaintiff, (2) Dr. Hudson's own acknowledgment of the unremarkable imaging studies stood at odds were her opinion of disabling functional limitations, (3) Dr. Hudson's opinion stood at odds with findings of the specialists who limited Plaintiff's care to conservative treatment and, (4) "[n]either the neurologists nor pain specialist reported such extreme limitations" (Tr. 21). The ALJ instead assigned "great weight" to Dr. Viviano's August, 2009 finding that Plaintiff was capable of light work duty, noting that it was supported by a MRI of the lumbar spine performed the same month[3] (Tr. 20, 238, 241).

My own review of the transcript also supports the conclusion that Dr. Hudson's assessment was "extreme." For example, her finding that Plaintiff had experienced episodes of deterioration or decompensation at work "or in a work-like setting" is unsupported by her own or any other source's treating records (Tr. 410). Because Plaintiff alleges that she did not work after the July 6, 2009 car accident, it is unclear when and how Plaintiff "decompensated" at work. While Plaintiff cites a number of physical therapy records stating that she experienced pain and tenderness, her subjective claims are undermined by normal imaging studies taken the day of the accident and the MRIs showing unremarkable results (Tr. 207-210, 238, 260-261, 363-364). Likewise, her contention that the MRIs actually support her claims of disabling pain omit any explanation of how "minimal" degenerative

---

[3] As noted by the ALJ, Kevin L. Self, D.C. opined that between October, 2009 and February, 2010 Plaintiff was unable to work (Tr. 270, 297, 329). However, the entire amount of time that he found Plaintiff "disabled" was not more than five months. Nor did he ever opine that Plaintiff was continuously unable to work for 12 months or longer as required to establish disability. 42 U.S.C. §423(d)(1)(A).

changes (Tr. 238) or minimal disc bulging (absent nerve root impingement or herniation) (Tr. 260-261) could be expected to cause pain (much less disabling pain) and range of motion limitations.

In Plaintiff's second argument, she contends that the ALJ's errors in the treating physician analysis cannot be deemed harmless and therefore require remand. *Plaintiff's Brief* at 14-16. However, this argument is premised on the assumption that the ALJ erred in rejecting Dr. Hudson's opinion. Because the ALJ's discussion of Dr. Hudson's opinion was well supported and well explained, the undersigned concludes that he did not err. The absence of error therefore moots this argument.

In her reply to Defendant's cross motion for summary judgment, Plaintiff seems to raise an independent argument that the ALJ did not include all of her relevant limitations in the hypothetical question to the VE or RFC. *Reply,* at 2, *Docket #12*. It is well established that "[a] plaintiff cannot wait until the reply brief to make new arguments, thus effectively depriving the opposing party of the opportunity to expose the weaknesses of plaintiff's arguments." *Morris v. Commissioner of Social Sec.* 2012 WL 4953118, *10 (W.D.Mich.,October 17, 2012); *Sanborn v. Parker,* 629 F.3d 554, 579 (6th Cir.2010). Moreover, even assuming that Plaintiff had properly raised it in her motion for summary judgment, this argument is unavailing. The VE's job findings made in response to the hypothetical question constitutes substantial evidence only if the question contains the individual's physical and mental impairments. *Varley v. Commissioner of Health and Human Services*, 820 F.2d 777, 779 (6th Cir.1987).

However, as discussed above, the ALJ provided ample reasons for discounting Dr. Hudson's September, 2010 assessment and Plaintiff's subjective reports of limitation. Accordingly, he was not required to include the rejected claims in either the hypothetical

question to the VE or the ultimate RFC. *See Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118–119 (6th Cir.1994) (ALJ not obliged to include discredited findings in the hypothetical question). Further, despite the lack of objective evidence supporting the claim, the ALJ took Plaintiff's allegations of physical limitations into account by limiting her to work allowing for occasional balancing, stooping, crouching, kneeling, and crawling; a sit/stand option; and the need for a cane (Tr. 49). In consideration of his findings that Plaintiff experienced depression and moderate limitations in social functioning and concentration, persistence, and pace, he limited her to simple, unskilled low stress work requiring only one to three-step tasks with only occasional close proximity to coworkers and supervisors, and only occasional, indirect exposure to the public (Tr. 49). Plaintiff's argument that either the hypothetical question or RFC did not account for her full degree of limitation is thus unavailing.

In closing, I note that my recommendation to uphold the administrative decision should not be read to trivialize Plaintiff's legitimate health concerns or financial problems. Nonetheless, because the ALJ's determination was well within the "zone of choice" accorded to the fact-finder at the administrative hearing level it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of

appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 29, 2013                s/R. Steven Whalen
                                      R. STEVEN WHALEN
                                      UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on August 29, 2013, electronically and/or by U.S. Mail.

                                      s/Michael Williams
                                      Case Manger to the
                                      Honorable R. Steven Whalen